IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENNIE MILLER TABB, III,          :
     Plaintiff                        :
                           :     CIVIL NO. 1:10-CV-1122
     v.                               :
                           :     (Judge Caldwell)
DEPUTY HANNAH, *et al.*,          :
     Defendants                       :

M E M O R A N D U M

I.    *Introduction*

        On May 25, 2010, plaintiff, Bennie Miller Tabb, an inmate at the Smithfield

State Correctional Institution (SCI-Smithfield) in Huntingdon, Pennsylvania, filed this pro se

civil-rights action.  The court screened the original complaint pursuant to 28 U.S.C. § 1915,

and directed Tabb to file an amended complaint.  The Amended Complaint was filed on

July 30, 2010.  Presently before the court is Defendants' Motion to Dismiss the Amended

Complaint and for a More Definite Statement.  (Doc. 23).  Tabb did not oppose the motion.[1]

---

[1]  The following named defendants are Pennsylvania Department of Corrections (DOC) employees and are represented by counsel: former Secretary Beard; Superintendent Fisher; Deputy Royer; Deputy Heaster, Deputy Hannah; Deputy Eckard, Ms. Hollibaugh, Major Robinson, Capt. Myers; Counselor Park; Unit Manager Burks; Lt. Crouch; Lt. Kohler; Lt. Rivello; Lt. Williams; Sgt. Abrashrff; Sgt. Sheets; CO Barnett; CO Ersek; CO McVay.

    However, several waivers of service were returned unexecuted due to the DOC's inability to ascertain the identity of the following defendants: CO Miller; CO Dell; Sgt. Britt; Keri McCke; CO Householder; CO Kennedy; and CO Powell.  *See* Docs. 17 and 20-22.  Tabb was notified that additional information was needed to identify these individuals to serve them via these documents but has not provided the court with any additional information.  Accordingly, these defendants will be dismissed pursuant to Fed. R. Civ. P. 4(m).  Rule 4(m) provides that "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed.R.Civ.P. 4(m).

For the reasons that follow, the defendants' motion for a more definite statement will be denied, and the motion to dismiss granted in part and denied in part.

II.   *Standard of Review*

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).  A court may consider documents that are attached to or submitted with the complaint, *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002), and matters of public record, *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006), including court filings.  *See Churchill v. Star Enterprises*, 183 F.3d 184, 190 n.5 (3d Cir. 1999) (citing *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).

In addition, a complaint must comply with the requirements of Fed. R. Civ. P. 8(a)(2) which states that a complaint need only contain "a short and plain statement of the claim."  Detailed factual allegations are not required, *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964, but a complaint has to plead "enough facts to state a claim to relief that is plausible on its face."  *Id*. at 570, 127 S.Ct. at 1974.  Rule 8 demands "more than an

unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129

S.Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting

*Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965).  "[L]abels and conclusions" are not enough,

*Twombly,* 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "is not bound to accept as

true a legal conclusion couched as a factual allegation." *Id*., 127 S.Ct. at 1965 (quoted

case omitted).

III.   *Background*

> To assist Tabb in filing his amended complaint, the Clerk of Court sent him

two blank copies of this court's civil-rights complaint form.  Tabb did not use the form.

Instead, his Amended Complaint consists of eighteen single-spaced handwritten pages

and sixty-nine pages of exhibits.  *See* Doc. 14.  There are no numbered paragraphs or

short concise statements of facts, but the Amended Complaint is full of legal arguments

and case citations.

> The Amended Complaint alleges as follows.  Tabb, a member of the

Gangster Disciples gang, is housed in SCI-Smithfield's Restricted Housing Unit (RHU).  In

January 2010, CO Burnett labeled him a "rat and a snitch." (Doc. 14, Am. Compl. at p. 2

and p. 15).[2]  Tabb believes CO Barnett's conduct placed his life in danger from other gang

members, who told him he was a dead man when he enters general population.  (Doc. 14-

3 at p. 3).

---

[2]  Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the Electronic Case Filing system (ECF) rather than the page number of the original document.

Tabb sent a request slip to Security Capt. Myers, a request to staff member to his Unit Manager Burks, and one to his Counselor Mr. Parks, all regarding Barnett's conduct and requesting to be separated from him.  (Doc. 14 at p. 2).  He also filed a grievance with Ms. Holibaugh, the grievance coordinator.  (Doc. 14-3 at p. 1).  Lt. Williams investigated the grievance and denied it.  (*Id*. at p. 2).  Tabb was dissatisfied with the investigation.  (Doc. 14 at p. 3).

On June 12, 2010, almost a month after filing his Original Complaint in this court, Tabb was assaulted by his RHU cellmate Robert Davis.  (*Id.*)  Tabb avers this assault took place "because state officials on 6-2 and 2-10 shift on (KA1-Block) RHU is still labeling [him] a 'snitch and a rat.'"  (*Id*. at p. 4).  The following officers "conspire[d] with Officer G. Barnett in labeling him a 'snitch and rat'": CO Kennedy; R.E. Miller, Powell, Sgt. Britt, T. Dell, Ersek. Sgt. Sheets, Householder, S.P. Dell, Lt. Kohler, Lt. Crouch, McVay and Sgt. Arashrff.  (*Id*.)  On four occasions he notified members of the Program Review Committee (PRC), which was comprised of Deputy Hannah, Deputy Royer and Deputy Heaster, of CO Barnett's actions.  (Doc. 14 at p. 6; Doc. 14-4 at pp. 1-4).  He alleges all three PRC members were "on fair notice" of CO Barnett's actions and his need for protection but failed to act appropriately.  (Doc. 14 at p. 7).

Tabb alleges he was subject to various act of retaliation because he filed institutional grievances.  (*Id*.)  The first act of retaliation was when he was moved to JB Block in March 2010.  (*Id*. at p. 8).  Next, he claims he received false misconducts from CO

Moore,[3] CO Sulliman[4] and Mr. Park.[5]  (*Id*.)  He asserts a claim for retaliation against the following prison staff because "each played there (sic) part in" retaliating against him: Powell; Barnett; Hannah; Royer; Heaster; S.P. Dell; Smithy; Sulloman; Beard; Britt; Burks; Park; Crouchy; Dell; Kennedy; Rivello; Fisher; Kohler; Everhart; Robinson; Williams; Smeals; McCke; Varner; Miller; McVay; Ersek; Sheets; Householder and Abrashrff.  (Doc. 14 at pp. 16-17).[6]

Next Tabb alleges that on August 28, 2008, CO K. Powell confiscated his draft materials for a Post Conviction Relief Act (PCRA) petition, which he needed for filing a timely petition.  (Doc. 14 at p. 9 and Doc. 14-2 at p. 4).  He claims his documents were withheld for more than 120 days and not returned until after his filing deadline had expired. (Doc. 14 at p. 9).  As a result, his January 2, 2009, PCRA petition was denied as untimely.

---

[3]  On April 13, 2010, CO G. Moore issued Tabb a misconduct for threatening an employee or their family with bodily harm after he was reported as saying "You tell that Peggy Everhart in the mail room if she keeps messing with my mail, I'm gonna have some boys visit her at her crib."  *See* Doc. 14-8 at pp. 1-2. Following a video hearing, the Hearing Examiner held that "a preponderance of evidence to establish that Mr. Tabb did threaten Ms. Everhart".  (*Id*.)  Tabb received ninety-days Disciplinary Confinement (DC) as a sanction.

[4]  On April 15, 2010, CO Sullivan, not Sulliman, issued Tabb a misconduct for refusing to obey an order after he was ordered to give a urine sample.  (*See* Doc. 14-8 at p. 3).  Upon hearing from Tabb's witness (Sgt. Kovacs) and reviewing the unit's video recording from the time in question, the Hearing Examiner found Tabb not guilty.  (*Id*. at p. 5).  No sanction was imposed.

[5]  On April 16, 2010, Park issued Tabb a misconduct for threatening an employee and using abusive language.  (Doc. 14-8 at p. 6).  Following a misconduct hearing, the Hearing Examiner held that "Park presents a preponderance of evidence to establish that Mr. Tabb did threaten the counselor by stating 'If I see you on the walk, I'm going to knock your ass out."  (*Id*. at p. 7).  The abusive language charge was dismissed.  Tabb received an additional ninety days in DC as a sanction.  (*Id*.)

[6]  No entry of appearance has been entered on behalf of the following defendants because Plaintiff failed to identify them properly: Powell; Dell; S.P. Dell; Britt; Kennedy, McCke, Housholder. The following individuals are not identified as defendants in this action: Smithy; Sulloman; Everhart; Smeals; and Varner.

(*Id.*)

Some background on this claim is found in *Tabb v. Fisher*, 2:11-CV-1243 (W.D. Pa.), Tabb's federal habeas petition filed under 28 U.S.C. § 2254.[7]  After appointing Tabb counsel, an amended PCRA petition was filed, and the PCRA court conducted a hearing.  In his amended PCRA petition, Tabb sought to justify the late filing of his petition pursuant to 42 Pa. Con. Stat. Ann. § 9545(b)(1)(i) by claiming prison officials had interfered with his ability to timely raise his claims as a result of their confiscation of his draft PCRA petition. *See Tabb v. Fisher*, 2:11-CV-1243 (W.D. Pa.), Doc. 23-18 at pp. 5-6, Amend. PCRA Pet.  The trial court found no merit to this claim.  *See Tabb v. Fisher*, 2:11-CV-1243 (W.D. Pa.), Doc. 23-23, Order Denying PCRA, *Cmmwlth. v. Tabb*, No. CR 382-2006 (Lawrence Cnty. Ct. Common Pleas, Sept. 17, 2009).  The trial court held that:

> [T]he Defendant could have begun preparing his PCRA petition as early as November 13, 2007 when the year clock began to toll.  Defendant testified that his papers were not confiscated until August 28, 2008 — giving the Defendant over nine months to prepare his petition while the legal records were in his possession.  Furthermore . . . the Defendant would have still been able to draft a PCRA without his records even though doing so might not be preferable to him.  In fact, Defendant testified that he could recall specific facts that he used in his *pro se* petition and was able to recall relevant witness testimony. Defendant also testified that he was able to use an appeal submitted on his behalf by his prior trial counsel to draft his *pro se* petition.

(*Id.* at p. 8) (internal citations omitted).  The Pennsylvania Superior Court affirmed the trial court, adding that:

---

[7]  The court takes judicial notice of the docket and documents filed in that action, including documents from Plaintiff's state-court PCRA proceedings.

> Tabb has failed to specify any claim that he was unable to discover because of his lack of access to his trial records. Indeed, Tabb testified that he drafted his *pro se* petition from memory in December of 2008 — before his records were returned to him.  We are therefore left to conclude that Tabb's lack of access to his records for a period of time did not preclude him from discovering the claims he wished to raise on collateral review.  We discern no error in the trial court's decision to dismiss Tabb's petition as untimely.

*Tabb v. Fisher*, 2:11-CV-1243 (W.D. Pa.), Doc. 23-30, Order Denying PCRA Appeal, *Cmmwlth. v. Tabb*, No. 1763 WDA 2009 (Pa. Super. Sept. 21, 2010).  On March 30, 2011, the Pennsylvania Supreme Court denied Tabb's Petition for Allowance of Appeal.  *See Tabb v. Fisher*, 2:11-CV-1243 (W.D. Pa.), Doc. 23-34, *Cmmwlth. v. Tabb,* No. 565 WAL 2010 (Pa. Super. Mar. 30, 2011).  A Magistrate Judge issued an order on January 26, 2012, dismissing Tabb's federal habeas corpus petition as untimely.  *See Tabb v. Fisher*, 2:11-CV-1243 (W.D. Pa.), Doc. 27.

Based on the above, the court gleans the following claims from Tabb's Amended Complaint:  (1) In January 2010, CO Barnett labeled him a "rat and snitch," placing his life in danger; (2) once notified of CO Barnett's actions, Lt. Williams, Captain Myers, Lt. Rivillo, Counselor Park and Unit Manager Burks failed to properly investigate and address the matter; (3) members of the PRC failed to act upon Tabb's request to be separated from CO Barnett; (4) Superintendent Fisher, Major Robinson, Capt. Myers, Counselor Park, Unit Manager Burks, Lt. Williams, Lt. Crouch, Lt. Rivello, Deputy Hanna, Deputy Royer, Deputy Heaster, Ms. Hollibaugh, Ms. McCke and Secretary Beard "fail[ed] to tr[ain] and fail[ed] to protect" Tabb from assault by his cellmate Robert Davis; (5) RHU officers Kennedy, Miller, Powell, Sgt. Britt, T. Dell, Ersek, Sgt. Sheets, Householder, S.P.

Dell, Lt. Kohler, Lt. Crouch, McVay and Sgt. Abrashrff, who work either the 6-2 or 2-10

shifts in the RHU, "conspire[d] with" CO Barnett to label him a snitch which caused him to

be assaulted by his RHU cellmate; (6) he was transferred to JB block in retaliation for filing

grievances; (7) in April 2010, Officers Moore, Sulloman and Counselor Park issued him

false misconducts in retaliation for his filing of grievances; and (8) on August 28, 2008,

Corrections Officer "K. Powell" confiscated Tabb's draft PCRA materials for a 120 days

which resulted in his collateral appeal being denied as untimely filed.  (Doc. 14, Am.

Compl.).

IV.    *Discussion*

    A.    *Defendants' Motion for A More Definite Statement*

      As noted, Defendants filed a motion to dismiss the amended complaint and

for a more definite statement.  Under Fed. R. Civ. P. 12(e), a party can "move for a more

definite statement of a pleading to which a responsive pleading is allowed but which is so

vague or ambiguous that the party cannot reasonably prepare a response."  Defendants

contend it would be difficult, if not impossible, to file an answer to the Amended Complaint.

As noted, it consists of eighteen single-spaced handwritten pages and sixty-nine pages of

exhibits.  There are no numbered paragraphs or short concise statements of facts, and it

contains legal arguments and case citations.

      In reviewing Tabb's Amended Complaint, the court agrees that Plaintiff did

not comply with our previous order directing him to use our form civil-rights complaint when

submitting his Amended Complaint, and that his present Amended Complaint does not

comply with Fed. R. Civ. P. 10(b) or Local Rule 4.7(a).[8]  Reading the Amended Complaint is no easy task.  However, given the fact that defendants have successfully read through the Amended Complaint and now seek to dismiss several of its claims, the court will not direct Tabb to file an second amended complaint.  The motion for a more definite statement will thus be denied, and the court will address Defendants' motion to dismiss.

      B.      *The Claim that Supt. Fisher, Lt. Williams, Capt. Myers, Lt. Rivello, Counselor Park and Unit Manager Burks failure to Properly Investigate Tabb's Allegations Regarding CO Barnett.*

Although an inmate has a constitutional right to file a grievance, *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (nonprecedential), he does not have a constitutionally protected right to a grievance procedure.  *Sims v. Piazza*, 462 F. App'x 228, 231-32 (3d Cir. 2012) (nonprecedential).  Accordingly, a mere allegation of a failure to investigate is not sufficient to sustain a § 1983 claim.  *See Graw v. Fantasky*, 68 F. App'x 378 (3d Cir. 2003) (nonprecedential).

An inmate also has no federally protected liberty interest in having investigations or grievances resolved in his favor or to his satisfaction.  In other words, a prison official's failure to agree with an inmate's allegations, or take a specific action requested by a prisoner, does not without more, indicate unconstitutional conduct by the

---

[8]  Fed. R. Civ. P. 10(b) requires that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Local Rule 4.7(a) provides "[i]n order to promote the speedy, just and efficient administration of civil rights complaints subject to the [Prison Litigation Reform Act], the court has established forms to be used by prisoners for filing civil right complaints.  The prisoner/plaintiff should complete and file the court-approved forms when initiating a civil complaint."

investigators or those who respond to the grievance.  *See Alexander v. Forr,* No. 3:CV-04-0370, 2006 WL 2796412, at *19-20 (M.D. Pa. Sept. 27, 2006).

Here, Tabb states that in January 2010 he requested the above-identified defendants to separate him from CO Barnett due to the officer labeling him a rat and a snitch, placing his life in danger.  (Doc. 14 at p. 2).  The above defendants took "no actions," which Plaintiff equates with a "failure to protect."  (*Id.* at pp. 2-3).

This claim lacks merit.  Tabb acknowledges that Lt. Williams did investigate his grievance by interviewing CO Barnett and all H block officers, and that CO Barnett was removed from the unit for one day.  Tabb therefore cannot claim his request for separation was not taken seriously.  (Doc. 14-3 at p. 4).  During Lt. Williams' investigation, CO Barnett denied commenting about Tabb's case to other inmates, giving his mail to other inmates, or calling him a rat.  (Doc. 14-3 at p. 2).  The other H block officers reported they did not hear other inmates call Tabb a rat or heard of any threats against his life.  (*Id.*)  Throughout this time of inquiry, Tabb was advised to provide staff with specific names of inmates threatening him.  (*Id.* at p. 9).  He never provided specific names during this time.

It thus appears that the defendants did not agree with Tabb, or his request for relief, but that does not mean his constitutional rights were violated by the way his complaints were investigated.  He is not guaranteed a response to his requests, or one in his favor.

The fact that Tabb was assaulted by his RHU cellmate approximately six months after his request for separation, and months after filing this lawsuit, does not alter our decision.  When an inmate seeks protection in the absence of an attack, he must

demonstrate a "pervasive risk of harm" to his safety.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror."  *Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985).  There is nothing in the Amended Complaint, or the multitude of documents attached to it, to suggest that these defendants were aware of any specific inmate threatening Tabb or posing a risk to his safety.  (*Id*. at p. 9).  This is underscored by Tabb's allegation that the unidentified inmates threatening him told him that he would be a "dead man" when he went "to population."  (*Id*. at p. 3).  Davis, his RHU cellmate, did not assault him in general population, but in the RHU, after being his RHU cellmate for several months.  The court concludes that the factual scenario set forth by Tabb is insufficient to establish deliberate indifference on the part of these defendants.  *See Jones v. Beard*, 145 F. App'x. 743, 745-46 (3d Cir. 2005) (nonprecedential) (isolated comments were insufficient to show that the guards knew that inmate faced a substantial risk such that they could be considered deliberately indifferent to that risk).

> C.   *The Failure-to-Protect Claim Against the Members of the PRC:*
> *Hannah, Royer and Heaster.*

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 828-29, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994).  Labeling an inmate a snitch may give rise to an Eighth Amendment violation if the prison official acted with deliberate indifference to a substantial risk of serious harm to the inmate.  *See Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001).

To establish that prison officials violated the Eighth Amendment by failing to prevent harm, an inmate must satisfy a two-pronged test that includes an objective and subjective element. *Farmer*, 511 U.S. at 828-29, 114 S.Ct. at 1974.  An inmate must show (1) that the prison conditions posed a substantial risk of serious harm and (2) that prison officials were deliberately indifferent to the inmate's safety.  *Id.* at 834, 114 S.Ct. at 1977.  Prison officials exhibit deliberate indifference when they know of and disregard an excessive risk to inmate safety; mere negligence will not suffice.  *Id.* at 835-837, 114 S.Ct. at 1978-1979.  To constitute deliberate indifference as defined in *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837, 114 S.Ct. at 1979.  However, an official who knows of a substantial risk to an inmate's health or safety but acts reasonably under the circumstances will not be held liable under the Eighth Amendment, even if the threatened harm results.  *Id*. at 843, 114 S.Ct. at 1982-1983.

Tabb claims he notified the PRC on four separate occasions that CO Barnett labeled him a snitch, putting his life in danger.  However, notably absent from the Amended Complaint is any allegation suggesting that the members of the PRC knew or should have known based on Tabb's allegations that he was at risk of harm from his RHU cellmate, Davis.  There are no assertions that Tabb told the members of the PRC that he was afraid of Davis or any other specific cellmate, or that Davis had ever threatened him prior to the

June 12, 2010, assault.[9]  Accordingly, there are insufficient allegations in the Amended

Complaint or attached exhibits to suggest the members of the PRC failed to protect Tabb

from harm after CO Barnett allegedly labeled him a rat and a snitch.

     D.    *Conspiracy by RHU Officers*

     In part, to assert a conspiracy claim under section 1983 a plaintiff must

establish the elements of a civil conspiracy.  *Ammlung v. City of Chester*, 494 F.2d 811,

814 (3d Cir. 1974) (relying on Pennsylvania civil conspiracy law to set forth the elements).

"A civil conspiracy is a combination of two or more persons acting in concert to commit an

unlawful act, or to commit a lawful act by unlawful means, the principal element of which is

an agreement between the parties to inflict a wrong against or injury upon another, and an

overt act that results in damage."  *Adams v. Teamsters Local 115*, 214 F. App'x 167, 172

(3d Cir. 2007) (nonprecedential) (quoting in part *Hampton v. Hanrahan*, 600 F.2d 600, 620-

21 (7th Cir. 1979)) (quoted case and internal quotation marks omitted).  Although the Third

Circuit has recognized that "direct evidence of a conspiracy is rarely available and that the

existence of a conspiracy must usually be inferred from the circumstances," allegations of

conspiracy must provide some factual basis to support the existence of agreement and

concerted action.  *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 184-85 (3d Cir.

2009).

---

    [9]  In fact, documents submitted by Tabb suggest that he and Davis were housed together for at least two months prior to the June 12, 2010, incident.  *See* Doc. 14-8 at p. 4.  Additionally, just four days prior to the assault, inmate Davis requested Supt. Fisher to drop a misconduct charge issued to Tabb due to Davis' action.  "My cellie (Tabb) received misconduct BI52852 for my actions he had nothing to do with it sir I should be the one to get the misconduct no[t] Tabb.  I am asking that it be droped (sic) and me recharged."  *See* Doc. 14-12 at p. 4.

In the instant case, Tabb alleges that Officers Kennedy, Miller, Powell, Britt, T. Dell, Ersek, Sheets, Householder, S. P. Dell, Lt. Kohler, Lt. Crouch, McVey and Sgt. Abrashrff, all RHU officers on his block, conspired with CO Barnett in "labeling [him] a snitch and rat" which resulted in his being assaulted by his cellmate.[10]  (Doc. 1 at p. 4).

Nonetheless, his vague allegations of a conspiracy fail to state a claim. Moreover, it is apparent that despite the multiple opportunities to do so, Plaintiff still fails to provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action by these defendants.  Thus, Plaintiff has failed to allege a conspiracy claim against any of these defendants.  Tabb's conspiracy claim must be dismissed because of his failure to state, in a non-conclusory fashion, "facts from which any type of conspiratorial agreement between [these defendants] can be inferred."  *D.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992).  Tabb's conspiracy claim against Officers Kennedy, Miller, Powell, Britt, T. Dell, Ersek, Sheets, Householder, S. P. Dell, Lt. Kohler, Lt. Crouch, McVey and Sgt. Abrashrff fails as a matter of law.

---

[10]  The court notes that there has been no entry of appearance on behalf of defendants Kennedy, Powell, Britt, T. Dell, Householder, and S.P. Dell.  Although the Marshals attempted to serve these defendants, as identified by Tabb, the DOC was unable to ascertain their identities. Tabb received copies of the unexecuted waivers of service and defense counsel's letter regarding these service matters.  *See* Docs. 17 and 20-22.  To date Tabb has not provided any additional information to assist in their service.  Therefore, they will be dismissed from the action pursuant to Fed. R. Civ. P. 4 (m).

E.    *Lack of Personal Involvement of Secretary Beard, Supt. Fisher,*
      *Major Robinson, Ms. Hollibaugh, and Ms. McCke*

To state a viable § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 580-81 (3d Cir. 2003).

In *Iqbal*, *supra*, 556 U.S. at 676, 129 S.Ct. at 1948, the Supreme Court observed that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." The Court further emphasized that in a § 1983 suit or a *Bivens* action, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id*., 556 U.S. at 677, 129 S.Ct. at 1949. A "defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Individual liability can only be imposed if the state actor played an "affirmative part" in the alleged misconduct. *Chinchello v. Fenton* , 805 F.2d 126, 133 (3d Cir. 1986). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207).

Alternatively, a supervisor may also be held liable under § 1983 if it is shown that he or she "established and maintained a policy, practice or custom which directly

caused [the] constitutional harm." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572,

586 (3d Cir. 2004).  Thus, supervisor liability may be imposed under Section 1983 only if

"the connection between the supervisor's directions and the constitutional deprivation [is]

sufficient to demonstrate a plausible nexus or affirmative link between the directions and

the specific deprivation of constitutional rights at issue." *Santiago v. Warminster Third-*

*party.*, 629 F.3d 121, 130 (3d Cir. 2010).  Additionally, the absence of an underlying

constitutional violation precludes any supervisory liability on a "knowledge or

acquiescence" or "failure to train" theory.  *Crawford v. Lappin*, 446 F. App'x 413, 416 (3d

Cir. 2011) (nonprecedential); *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011).

      Here, Tabb simply lumps a group of defendants together, asserting they

"fail[ed] to tran (sic), and fail[ed] to protect" him from assault.  (Doc. 14 at p. 3).  While

some of the other named defendants took part in the January 2010 grievance review

process and/or investigation, or are members of the PRC, Tabb fails to allege any

involvement of Secretary Beard, Superintendent Fisher, Major Robinson, Ms. Hollibaugh,

or Ms. McCke in his Amended Complaint.  Tabb's failure-to-train and failure-to-protect

claims against these individuals are thus conclusory; they do not identify what actions any

of these, or any of the other listed defendants, did, nor do the claims suggest a policy,

practice or custom of SCI-Smithfield, or the DOC, that the defendants ignored which

created an unreasonable risk of a constitutional injury.  As the assumption of truth is

inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of

action supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, 129 S.Ct. at

1949, based on the foregoing, Tabb's "failure to train" and "failure to protect" claims against

Secretary Beard, Superintendent Fisher, Major Robinson, Ms. Hollibaugh, and Ms. McCke

will be dismissed with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

      F.    *Tabb's Claims of Retaliation*

      In his Amended Complaint, Tabb alleges that he was retaliated against for

exercising his constitutionally protected right to submit grievances and file lawsuits.  The

Third Circuit has determined that such activities are constitutionally protected.  *See Kelly v.*

*York County Prison*, 340 F. App'x 59, 61 (3d Cir. 2009) (nonprecedential).  Government

actions that are not in themselves unconstitutional can violate the Constitution if they are

substantially intended to punish an individual for exercising a constitutional right.  *See*

*Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Allah v. Seiverling*, 229 F.3d 220, 224

(3d Cir. 2000).

      Proof of a prima facie retaliation claim requires the plaintiff to demonstrate

that: (1) he engaged in constitutionally protected activity; (2) he suffered "adverse action"

as a result; and (3) his protected activity was a "'substantial or motivating factor'" for the

adverse action.  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citation omitted).  Once

Plaintiff has made a prima facie case that his exercise of a constitutionally protected right

was a substantial or motivating factor in the challenged action, the burden shifts to the

defendants to prove by a preponderance of the evidence that they "would have made the

same decision absent the protected conduct for reasons reasonably related to penological

interest."  *Carter v. McGrady*, 292 F.3d 152, 158 (3d Cir. 2002) (quoting *Rauser*, 241 F.3d

at 334).  When analyzing a retaliation claim, it must be recognized that the task of prison

administrators and staff is difficult, and the decisions of prison officials require deference,

particularly where prison security is concerned.  *Rauser,* 241 F.3d at 334.

      1.      *March 10, 2010, Transfer from RHU HB Block to RHU JB Block.*

      Tabb alleges that he was transferred from one RHU block to another in

retaliation for filing grievances.  (Doc. 14 at p. 8).  The filing of a grievance is a

constitutionally protected activity; thus Plaintiff satisfies he first element of a retaliation

claim.  However, Plaintiff cannot satisfy the second element of the claim.  Specifically,

Tabb fails to aver an adverse action because he does not aver that the conditions in JB

block were worse than in HB block.  We also note he does not allege who was responsible

for making the decision to transfer him, even after being given repeated opportunities to do

so.  Accordingly, he fails to state a retaliation claim relative to his transfer from one RHU

block to another.

      2.      *Receipt of Retaliatory Misconducts.*

      Tabb alleges CO Moore, CO Sulliman and Mr. Park issued him retaliatory

misconducts.  When there is a finding of guilt in a prison disciplinary proceeding, a prisoner

cannot prevail on a claim that the person issuing the misconduct issued a false misconduct

if the disciplinary sanction imposed is supported by some evidence.  *See Alexander v.*

*Fritch*, 396 F. App'x 867, 874 (3d Cir. 2010) (nonprecedential) (holding that "because there

was evidence to support the hearing examiner's finding of guilty, there was a legitimate

penological reason for the charge and punishment"); *Carter v. McGrady*, 292 F.3d 152,

159 (3d Cir. 2002) (even if prison officials were motivated by animus toward jailhouse

lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude

that the misconducts would have issued notwithstanding his jailhouse lawyering).

Likewise, a corrections officer's filing of alleged false or retaliatory misconducts which are

later dismissed cannot, as a matter of law, support a claim of retaliation against any

defendant in the absence of a penalty or "adverse action."  *See Brightwell v. Lehman*, 637

F.3d 187, 194 (3d Cir. 2011).

First, the court will address Tabb's allegations that CO Sulliman[11] issued him

a retaliatory misconduct on April 15, 2010.  The documents Tabb attaches to the Amended

Complaint clearly demonstrate that following a misconduct hearing, the Hearing Examiner

found Tabb "not guilty" of the charge.  (Doc. 14-8 at p. 5).  No sanction was imposed by the

Hearing Examiner.  Moreover, Tabb was already housed in the RHU at the time of his

receipt of this misconduct report, thus the continuation of this status pending the resolution

of the misconduct hearing did not result in him suffering any "adverse consequence" as a

result of CO Sullivan's actions.  Accordingly, Tabb fails to state a claim of retaliation based

on his receipt of CO Sullivan's misconduct as it was ultimately discharged in his favor

without his incurring any adverse consequences.  *See Brightwell*, 637 F.3d at 194.

Next, we turn to the two separate misconducts on which Tabb was found

guilty by a Hearing Examiner.  As previously noted in footnote 3, *supra*, CO Moore issued

Tabb a misconduct for threatening Ms. Everhart.  *See* Doc. 14-8 at pp. 1-2.  Following a

misconduct hearing, the Hearing Examiner held that "a preponderance of evidence to

---

[11]  The record shows that CO Sullivan, not CO Sulliman, issued this misconduct.  (Doc. 14-8 at p. 3).  CO Sullivan is not named as a defendant in this action.  Nonetheless, we will address the claim.

establish that Mr. Tabb did threaten Ms. Everhart". (*Id*.)  Tabb received ninety-days

Disciplinary Confinement (DC) as a sanction.  Counselor Park issued Tabb a retaliatory

misconduct on April 16, 2010.  As noted in footnote 4 above, issued Tabb this disciplinary

report after Tabb threatened him. (Doc. 14-8 at p. 6).  Following a misconduct hearing, the

Hearing Examiner specifically found that Tabb threatened to "knock [Park's] ass out." (*Id*.

at p. 7).  For both disciplinary decisions, Tabb does not make any due-process challenge

or otherwise oppose defendants' motion to dismiss these claims.  In light of the above, the

hearing examiner's guilty verdict based on a finding of some evidence satisfies the

defendants' burden to demonstrate that Tabb would have been issued the misconducts,

and reached the same outcomes absent his filing of grievances, for reasons that are

related to a legitimate penological interest.  *See Rauser* 241 F.3d at 334.  Thus, Tabb's

claims of retaliation based on his receipt of false misconducts will be dismissed.


> 3.    *Retaliation Claim Against Powell, Barnett, Hannah, Royer,*
>       *Heaster, S.P. Dell, Kennedy, Rivello, Hollibaugh, Myers, Supt.*
>       *Fisher, Kohler, Everhart, Robinson, Williams, Smeal, McCke,*
>       *Varner, Miller, McVay, Ersek Sheets, Householder and*
>       *Abrashoff.*

Because many inmates have a tendency to raise retaliation claims when they

are confronted with disciplinary action, district courts must examine prisoner retaliation

claims with sufficient skepticism to avoid becoming entangled in every disciplinary action

taken against a prisoner.  *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).  In

his Amended Complaint, Tabb flatly asserts, in a single sentence, that he has satisfactorily

asserted a retaliation claim against the above-identified defendants.  *See* Doc. 14 at p. 16.

This is a legal conclusion that is unsupported by any specific facts, thus making it

impossible to assess the merits of this claim against any of the named defendants.  Tabb's

failure to prove any factual averments to support the elements of his retaliation claims

against these defendants sabotages his assertion of retaliation.  *See Rauser*, 241 F.3d at

333-34 (elements of a retaliation claim).  Accordingly, Tabb's vague conclusory claim of

retaliation by these defendants will be dismissed.

      G.    *Access-to-the Courts Claim Against CO Powell*

      Prisoners have a constitutional right of access to the courts.  *See Lewis v.*

*Casey*, 518 U.S. 343, 346, 116 S.Ct. 2174, 2177, 135 L.Ed.2d 606 (1996); *Bounds v.*

*Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977).  However, when an

inmate does not allege an actual injury to his ability to litigate a claim, his constitutional

right of access to the courts has not been violated.  *See Lewis*, 518 U.S. at 352-53, 116

S.Ct. at 2180-2181.  An actual injury is shown only where a nonfrivolous, arguable claim is

lost because of defendant's actions.  *See Christopher v. Harbury*, 536 U.S. 403, 415, 122

S.Ct. 2179, 2186-2187, 153 L.Ed.2d 413 (2002).

      In this case, Tabb argues that on August 28, 2008, CO Powell confiscated his

draft PCRA petition and withheld it, along with his trial transcripts, interfering with his ability

to file a timely PCRA petition with the state court.[12]  (Doc. 14 at p. 9).   In order to succeed

on his access-to-the-courts claim, Tabb must show an actual injury resulting from the

---

[12]  It is noted that Tabb was advised by defendants that they could not identify CO Powell
for the purpose of service.  To date, Tabb has not provided defendants or the court will additional
information as to allow for the identification of this individual.  Nonetheless, the court addresses the
access-to-court claim because it would fail to state a claim against C.O. Powell even if he properly
in the suit.

confiscation of his legal materials three months prior to the expiration of his one-year

limitations period for filing his PCRA petition.

This exact issue was raised by Tabb in his amended habeas corpus petition.

The state trial court held hearings where this matter was addressed and Tabb testified.

The court found Tabb's claim of governmental interference preventing him from filing a

timely PCRA petition to be without merit.  First, Tabb possessed all of his legal materials

for nine of the twelve months of the one-year limitations period.  Second, Tabb testified

that he was able to recall specific facts that he used in his *pro se* PCRA petition and that

he was able to use an appeal drafted by his prior counsel to draft his *pro se* petition.  As a

result, the state court found that Tabb's inability to file a timely *pro se* postconviction

collateral relief had nothing to do with any claimed lack of access to his legal records.

Thus, Tabb cannot show an "actual injury" resulting from any acts or failures of the

unidentified CO Powell or any corrections staff.  *See Lewis*, 518 U.S. at 349, 116 S.Ct. at

2179.

H.      *"Snitch" Endangerment Claim against Officer Barnett*

Prison officials have a duty to protect prisoners from violence at the hands of

other prisoners.  Being violently assaulted in prison is simply not a part of the penalty that

criminal offenders pay for their offenses against society.  *See Farmer,* 511 U.S. at 831-834,

114 S.Ct. at 1976–1977.  "[B]eing branded a 'snitch' may have serious consequences to an

inmate's health."  *Tillery v. Owens*, 719 F. Supp. 1256, 1276-77 (W.D. Pa. 1989).

Here Tabb asserts that CO Barnett labeled him a snitch, resulting in his

assault by inmate Davis.  Defendants contend that Tabb has not sufficiently specified the

actions of CO Barnett labeling him a snitch and thus argue that his claim should be dismissed because it does not give CO Barnett "notice of the actual *conduct* complained of." (Doc. 24, Defs.' Brf. In Supp. Mot. to Dismiss at p. 10).

We disagree.  At the motion to dismiss phase, viewing the Amended Complaint in the light most favorable to Tabb, he alleges sufficient facts to allow his Eighth Amendment claim against CO Barnett to go forward.  Attached to his Amended Complaint, Tabb provides a copy of Grievance SMI 305332-10 (Doc. 14-3 at p. 1).  In that document, he alleges that CO Barnett is "telling" other RHU inmates that he is a "rat" and that he had "people thats (sic) in [his] criminal case lock[ed] up for murder witch (sic) is a lie and now the (inmates) is tellin (sic) all the lifers that I supposed to be a (rat)."  (*Id*.)  Clearly, Tabb alleges that CO Barnett communicated to other inmates that he is a "rat," thus placing him at risk of assault, which ultimately occurred.  For these reasons, Tabb's claim against CO Barnett is sufficient to move past the motion-to-dismiss stage.

V.    *Conclusion*

The sole surviving claim in this action is the Eighth Amendment endangerment claim lodged against CO Barnett for labeling Tabb a snitch.  As to the remaining claims against the remaining defendants, Tabb will not be granted a third opportunity to file an amended complaint to cure the deficiencies in his claims against them.  We base this on his blatant failure to follow the court's direction following the screening of his original complaint, his failure to oppose defendants' present motion to dismiss, and because allowing him to do so now would be futile and result in undue delay and prejudice to the defendants.  *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).

-23-

We will issue an appropriate order.

/s/ William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 30, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BENNIE MILLER TABB, III,          :
    Plaintiff                         :
                           :          CIVIL NO. 1:10-CV-1122
    v.                                :
                           :          (Judge Caldwell)
DEPUTY HANNAH, *et al.*,           :
    Defendants                        :

*O R D E R*

AND NOW, this 30th day of July, 2012, in accordance with the accompanying memorandum of law, it is ordered that:

1.  Defendants' Motion to Dismiss the Amended Complaint (Doc. 23) is granted as to all defendants except CO Barnett.

2.  Defendants' Motion to Dismiss the Amended Complaint as to the Eighth Amendment Claim lodged against CO Barnett is denied.

3.  Claims against Kennedy, Powell, Britt, T. Dell, Householder, and S.P. Dell are dismissed pursuant to Fed. R. Civ. P. 4(m) and  28 U.S.C. § 1915(e)(2)(B)(ii).

4.  Defendants' Motion for a More Definite Statement (Doc. 23) is denied.

5.  Defendant Barnett shall file an Answer to the Amended Complaint within twenty-one (21) days of the date of this Order.

                    /s/ William W. Caldwell
                    William W. Caldwell
                    United States District Judge